Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*King Spider LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KING SPIDER LLC,<br><br>*Plaintiff*<br><br>v.<br><br>884886 CH STORE, 8888888888888888 STORE, 9.9 DROP SHIPPING STORE, ALICEJULY STORE, ARMYCAL STORE, AT666 STORE, AYRBAO DROP SHIP STORE, BABYOUNG CLOTHING 2ND STORE, BABYOUNG CLOTHING 3TH STORE, BANG FOR BUCK STORE, BAOLIWEN STORE, BOBO HANDSOME STORE, BUYBUYBUY STORE, CARL-1 DANIELS STORE, CHATGPT BEST STORE, DA FELLA STORE, DESERT SPRING, DONGGUAN QICHENG GARMENT CO., LTD., DONGGUAN SHIAN TECHNOLOGY CO., LTD., DOREMIXXX STORE, ESSENTIALS DROPSHIPPING STORE, FAR FOREVER STORE, FASHION YOUNG PEOPLE STORE, FASHIONBESTBUY STORE, FFOG STORE, FOSHAN CHANCHENG YOUKU SHOE FIRM, FOSHAN PEANUT XISHI TRADING CO., LTD., GLFS STORE, GOOD DAY0205 STORE, GUANGZHOU YUHAOTONG TRADING CO., LTD., HIGH QUALITY FLAGSHIP FACTORY STORE, HIP FRIEND STORE, KEEP GOVING | CIVIL ACTION No.: 23-cv-3472 (JMF)<br><br><br>**AMENDED COMPLAINT**<br><br>**Jury Trial Requested** |

STORE, LDCLFY180212 STORE, LISA DISCOUNT STORE STORE, LUXURY FASHION DESIGNER STORE, MPSTUIDOS STORE, MR-WARDROBE STORE, OT MEN STORE, OVERSIZED STREETWEAR STORE, PANG-1983 STORE, PREMIUM CUSTOM LUXURY STORE, QUANZHOU BEST SUPPLY CHAIN MANAGEMENT CO., LTD., SHARE 819 STORE, SHINE-SUN STORE, SHOP1102089593 STORE, SHOP1102193611 STORE, SHOP1102194552 STORE, SHOP1102269349 STORE, SHOP1102438390 STORE, SHOP1102651876 STORE, SHOP1102659824 STORE, SHOP1102685068 STORE, SHOP1102709057 STORE, SHOP1102723100 STORE, SHOP4411017 STORE, SHUJIEXU STORE, STREETWEAR-SUP STORE, TEACHER911 STORE, WELL DONE CLOTHING STORE, WORLD HOODIES FACTORY STORE, XXDAI STORE, YSM171004 STORE, YUNYUN HIGH-QUALITY CLOTHING STORE, YYDS STORE STORE, ZHUO YUE FASHION STORE, AFTER 17 STORE, ALIBABA.COM HONG KONG LTD., ALIBABA.COM SINGAPORE E-COMMERCE PTE. LTD, ALIEXPRESS E-COMMERCE ONE PTE. LTD., ALL TOO WELL STORE, BELIEFS STORE, DONGGUAN RAMAX FASHION CO., LTD., DONGGUAN XINGMAI APPAREL CO., LTD., DONGGUAN XINYI CLOTHING CO., LTD., DONGGUAN YIJIA CLOTHING CO., LTD., GODDESS OF LUCK STORE, GUANGXI YULIN BISEN FOREIGN TRADE SERVICE CO., LTD., GUANGXI YULIN HUIWANGXIN FOREIGN TRADE SERVICE CO., LTD., GUANGZHOU BAOYUE GARMENT CO., LTD., GUANGZHOU BOXU TRADING CO., LTD., GUANGZHOU FANSHENG TRADE CO., LTD., GUANGZHOU HEALY APPAREL CO., LTD., GUANGZHOU JIEZHAN TRADING CO., LIMITED, GUANGZHOU LUOSI INTERNATIONAL TRADING CO., LTD., GUANGZHOU YIQI INFORMATION TECHNOLOGY CO., LTD, HUBEI HUI LI APPAREL CO., LTD., JIANGSU KEYING TECHNOLOGY CO., LTD., JIANGXI YI LINGZHI CLOTHING CO., LTD., JIANGXI YILILE IMP.& EXP. CO., LTD., JINJIANG CHENGWEN SUPPLY CHAIN MANAGEMENT., LTD., LINGLONGFS

STORE, NANCHANG DAILI CLOTHING CO., LTD., OOTDFASHION STORE, QUE LA FAMIL LE STORE, QINGHUA CLOTHING STORE, HULI DISTRICT, XIAMEN CITY, ROMANTIC HOUSE 24 STORE, SHANGRAO NIGHT LISTENING TRADING CO., LTD., SHAOXING JINGUO GARMENT&FURNISHINGS CO.,LTD, SHENZHEN CHAOTIAN TRADE CO., LTD., SHENZHEN OTI TEXTILE TECHNOLOGY CO., LTD., SHOP3561002 STORE, SHOPINVINCIBLE QUALITY STORE, TIANJIN MAIHE ELECTRONIC COMMERCE CO., LTD., WOMEN CLOTHES FACTORY STORE, XI 'AN AVIATION BASE XIN GANZHEN DEPARTMENT STORE, XIAMEN LINGYAO TECHNOLOGY CO., LTD., XIAMEN XIAOTIAN TWILIGHT TECHNOLOGY CO., LTD., XIAMEN YIYUANSEN TRADING CO., LTD., YIWU PARTYLAND COSTUMES CO., LTD., ZHENGZHOU SHANGZHIJIE TRADING CO., LTD., and ZHENPING COUNTY CANSHU CLOTHING STORE,

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or King Spider** | King Spider LLC |
| **Original Merchant Defendants** | 884886 CH Store, 8888888888888888 Store, 9.9 drop shipping Store, ALICEJULY Store, Armycal Store, AT666 Store, Ayrbao Drop Ship Store, Babyoung Clothing 2nd Store, Babyoung Clothing 3th Store, Bang For Buck Store, BAOLIWEN Store, BOBO Handsome Store, Buybuybuy Store, Carl-1 Daniels Store, ChatGPT BesT Store, Da Fella Store, Desert Spring, Dongguan Qicheng Garment Co., Ltd., Dongguan Shian Technology Co., Ltd., DOREMIXXX Store, Essentials Dropshipping Store, FAR FOREVER Store, Fashion Young People Store, fashionbestbuy Store, FFOG Store, Foshan Chancheng Youku Shoe Firm, Foshan Peanut Xishi Trading Co., Ltd., GLFS Store, Good Day0205 Store, Guangzhou Yuhaotong Trading Co., Ltd., High Quality Flagship Factory Store, Hip Friend Store, Keep Goving Store, LDCLFY180212 Store, Lisa discount store Store, Luxury Fashion Designer Store, MPstuidos Store, mr-wardrobe Store, OT Men Store, Oversized Streetwear Store, Pang-1983 Store, Premium Custom Luxury Store, Quanzhou Best Supply Chain Management Co., Ltd., Share 819 Store, Shine-sun Store, Shop1102089593 Store, Shop1102193611 Store, Shop1102194552 Store, Shop1102269349 Store, Shop1102438390 Store, Shop1102651876 Store, Shop1102659824 Store, Shop1102685068 Store, Shop1102709057 Store, Shop1102723100 Store, Shop4411017 Store, Shujiexu Store, Streetwear-Sup Store, Teacher911 Store, Well Done Clothing Store, World Hoodies Factory Store, XXDai Store, Ysm171004 Store, Yunyun High-quality Clothing Store, YYDS Store Store and Zhuo Yue Fashion Store |
| **New Merchant Defendants** | After 17 Store, All Too Well Store, Beliefs Store, Dongguan Ramax Fashion Co., Ltd., Dongguan Xingmai Apparel Co., Ltd., Dongguan Xinyi Clothing Co., Ltd., Dongguan Yijia Clothing Co., Ltd., Goddess of luck Store, Guangxi Yulin Bisen Foreign Trade Service Co., Ltd., Guangxi Yulin Huiwangxin Foreign Trade Service Co., Ltd., Guangzhou Baoyue Garment Co., Ltd., Guangzhou Boxu Trading Co., Ltd., Guangzhou Fansheng Trade Co., Ltd., Guangzhou Healy Apparel Co., Ltd., Guangzhou Jiezhan Trading Co., Limited, Guangzhou Luosi International Trading Co., Ltd., Guangzhou Yiqi Information Technology Co., Ltd, Hubei Hui Li Apparel Co., Ltd., Jiangsu Keying Technology Co., Ltd., Jiangxi Yi Lingzhi Clothing Co., Ltd., Jiangxi Yilile Imp.& Exp. Co., Ltd., Jinjiang Chengwen Supply Chain Management., Ltd., LINGLONGFS Store, Nanchang Daili |

|  | Clothing Co., Ltd., Ootdfashion Store, QUE LA FAMIL LE Store, Qinghua Clothing Store, Huli District, Xiamen City, Romantic House 24 Store, Shangrao Night Listening Trading Co., Ltd., Shaoxing Jinguo Garment&Furnishings Co.,Ltd, Shenzhen Chaotian Trade Co., Ltd., Shenzhen Oti Textile Technology Co., Ltd., Shop3561002 Store, ShopInvincible Quality Store, Tianjin Maihe Electronic Commerce Co., Ltd., Women Clothes Factory Store, Xi 'an Aviation Base Xin Ganzhen Department Store, Xiamen Lingyao Technology Co., Ltd., Xiamen Xiaotian Twilight Technology Co., Ltd., Xiamen Yiyuansen Trading Co., Ltd., Yiwu Partyland Costumes Co., Ltd., Zhengzhou Shangzhijie Trading Co., Ltd., and Zhenping County Canshu Clothing Store |
|---|---|
| **Merchant Defendants** | Original Merchant Defendants and New Merchant Defendants |
| **Alibaba Defendants** | Alibaba.com Hong Kong Ltd., Alibaba.com Singapore E-Commerce Pte. Ltd. and AliExpress E-Commerce One Pte. Ltd. |
| **Defendants** | Merchant Defendants and Alibaba Defendants |
| **Alibaba** | Alibaba.com Singapore E-Commerce Ptd. Ltd. and/or any other entity that owns and/or operates the Alibaba.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | AliExpress E-Commerce One Pte., Ltd. and/or any other entity that owns and/or operates the Alibaba.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Alibaba Platforms** | Alibaba, AliExpress, 1688.com, Taobao.com and Tmall.com |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint filed on April 24, 2023 |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Rucker Dec.** | Declaration of CB Rucker in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's |

| | Application |
|---|---|
| **Sp5der Products** | A young, successful high-end lifestyle streetwear line founded by American rapper, Young Thug, specializing in men's and women's apparel, accessories, bags and other ready-made goods |
| **Sp5der Registrations** | U.S. Trademark Registration Nos.: 6,512,199 for "SP5DER" for a variety of goods in Class 25; 6,681,320 "" for a variety of goods in Class 25; 7,049,772 "" for a variety of goods in Class 25; 7,031,211 "" for a variety of goods in Class 25; and 6,688,472 for "" for a variety of goods in Class 25 |
| **Sp5der Applications** | U.S. Application Nos.: 97/141,401 for "555 555" for a variety of goods in Classes 9, 25 and 41; 97/141,377 "SP5DER" for a variety of goods in Classes 9, 35 and 41; 88/490,200 "KING SPIDER" for a variety of goods in Class 25; 88/779,551 for "SP5 WORLDWIDE" for a variety of goods in Class 25; 90/298,790 "SP5" for a variety of goods in Class 25; 88/812,557 for "SP5WOM" for a variety of goods in Class 25; 97/141,407 "" for a variety of goods in Classes 9 and 41; 90/183,203 "" for a variety of goods in Class 25; 97/141,391 "" for a variety of goods in Classes 9 and 41; 90/271,508 "" for a variety of goods in Class 25; 90/183,210 "" for a variety of goods in Class 25; and 97/141,416 "" for a variety of goods in Classes 9 and 41 |
| **Sp5der Marks** | The marks covered by the Sp5der Registrations and Sp5der Applications |
| **Counterfeit Products** | Products bearing or used in connection with the Sp5der Marks, and/or products in packaging and/or containing labels bearing the Sp5der Marks, and/or bearing or used in connection with marks |

| | that are confusingly similar to the Sp5der Marks and/or products that are identical or confusingly similar to the Sp5der Products |
|---|---|
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group) and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff, a limited liability company organized and existing under the laws of the State of New York, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action (the "Action") involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d); trademark infringement of Plaintiff's unregistered trademarks in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); contributory trademark infringement and counterfeiting in violation of 15 U.S.C. §§ 1114, 1116(d) and 1117(b)-(c); and related state and common law claims, arising from Merchant Defendants' direct, and the Alibaba Defendants' contributory infringement of the Sp5der Marks, as further set forth herein.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. §

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

    a.    Upon information and belief, Merchant Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered Merchant Defendants' User Accounts, through which consumers in the U.S., including New York, can view one or more of Merchant Defendants' Merchant Storefronts that each Merchant Defendant operates, uses to communicate with Merchant Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

    b.    Upon information and belief, Merchant Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and

specifically New York.

c.      Upon information and belief, the Alibaba Defendants regularly conduct, transact and/or solicit business in the U.S. and New York specifically and derive substantial revenue from goods and/or services used and/or consumed in the U.S. and New York specifically in connection with the unlawful conduct complained of herein, which has caused, and continues to cause, injury to Plaintiff in the U.S. and in New York.

d.      Upon information and belief, the Alibaba Defendants target customers in the United States, including customers located in New York, through online marketing and advertising.

e.      Upon information and belief, all Merchant Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

f.      Upon information and belief, all Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

g.      Upon information and belief, all Defendants are aware of Plaintiff, its Sp5der Products and Sp5der Marks, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

h.      On May 6, 2014, Alibaba Group Holding Limited ("Alibaba Group"), the parent holding company of the Alibaba Defendants, filed its Form F-1 with the U.S. Securities and Exchange Commission for an Initial Public Offering of its shares in the U.S. to be listed on the New York Stock Exchange ("Form F-1").

i.      Alibaba.com Hong Kong Ltd. ("Alibaba.com Hong Kong"), Alibaba.com

3

Singapore E-Commerce Pte. Ltd. ("Alibaba.com Singapore") and AliExpress E-Commerce One Pte. Ltd. ("AliExpress E-Commerce") operate the Alibaba Platforms, including Alibaba and AliExpress, which facilitate the offering for sale and sale Counterfeit Products, with the knowledge and intent that such Counterfeit Products (i) will ultimately be sold to consumers throughout the U.S., including in New York; (ii) cause substantial consumer confusion among consumers throughout the U.S., including in New York; and (iii) cause harm throughout the U.S., including in New York.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## **THE PARTIES**

5.      Plaintiff Sp5der is a limited liability company organized and existing under the laws of the State of New York, with an address 1000 Park Avenue, Apartment A8, New York, New York 10028.

6.      Upon information and belief, the Merchant Defendants are merchants on the Alibaba and AliExpress (and potentially one or more of the other Alibaba Platforms), through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the address identified, if any, in the screenshots of Merchant Defendants' Merchant Storefronts in **Exhibit C**.

7.      Upon information and belief, Alibaba.com Hong Kong is organized and exists under the laws of Hong Kong, with its principal address located at 26/F Tower One, Times Square, Matheson St, Causeway Bay, Hong Kong.

8.      Upon information and belief, Alibaba.com Singapore is organized and exists under the laws of Singapore, with its principal address located at 51 Bras Basah Road, #04-08 Lazada One, Singapore, 189554.

9.      Upon information and belief, AliExpress E-Commerce is organized and exists under the

4

laws of Singapore, with its principal address located at 51 Bras Basah Road, #04-08 Lazada One, Singapore, 189554.

10.     Upon information and belief, Alibaba Defendants are related and/or affiliated companies.

11.     Upon information and belief, Alibaba.com Hong Kong Ltd. and Alibaba.com Singapore own, control and/or operate Alibaba, and AliExpress E-Commerce owns, controls and/or operates AliExpress.

## GENERAL ALLEGATIONS
### Plaintiff and Its Well-Known Sp5der Products

12.     Sp5der, launched by Plaintiff in or about 2019 by American rapper Young Thug, is a successful and high-end lifestyle streetwear line of men's and women's apparel, accessories, bags and other ready-made goods which are distributed in the United States and abroad.  Images of the Sp5der Products are attached hereto as **Exhibit A** and incorporated herein by reference.

13.      The Sp5der Products are marketed under the Sp5der Marks.  The Sp5der Brand is recognized for its familiar motifs, including rhinestones and spider webs, as well as its eccentric design language.

14.     The Sp5der Products are sold exclusively direct to consumer via King Spider's official website, https://kingspider.co.

15.     The Sp5der Products are only sold in periodic quantity-limited releases in which the Sp5der Products are not restocked once they sell out and in each quantity-limited release the supply of Sp5der Products made is intentionally low (hereinafter, "Drop(s)").

16.     The Sp5der Products are currently and have always been manufactured in the United States

and Pakistan only[2] and are not sold in or sold from China, nor are any sellers, including Merchant Defendants, authorized to sell Sp5der Products on Alibaba or AliExpress.

17.     Since the launch, the Sp5der Brand and Sp5der Products have been featured in numerous press publications, including, but not limited to, *Complex*, *Highsnobriety*, *Hot New HipHop* and *Hypebeast*, among others.

18.     The Sp5der Products typically retail for between $25.00 - $1,000.00.

19.     While Sp5der has gained significant common law trademark and other rights in its Sp5der Marks and Sp5der Products through use, advertising and promotion, Sp5der also protected its valuable rights by filing for and obtaining federal trademark registrations.

20.     For example, King Spider owns the following U.S. Trademark Registration Nos.: 6,512,199 for "SP5DER" for a variety of goods in Class 25; 6,681,320 "  " for a variety of goods in Class 25; 7,049,772 "  " for a variety of goods in Class 25; 7,031,211 "  " for a variety of goods in Class 25; and 6,688,472 for "  " for a variety of goods in Class 25.  King Spider has also applied for the registration of U.S. Application Nos.: 97/141,401 for "555 555" for a variety of goods in Classes 9, 25 and 41; 97/141,377 "SP5DER" for a variety of goods in Classes 9, 35 and 41; 88/490,200 "KING SPIDER" for a variety of goods in Class 25; 88/779,551 for "SP5 WORLDWIDE" for a variety of goods in Class 25; 90/298,790 "SP5" for a variety of goods in Class 25; 88/812,557 for "SP5WOM" for a variety of goods in Class 25; 97/141,407 "  " for a variety of goods in Classes 9 and 41; 90/183,203 "  " for a variety of goods

---

[2] The only Sp5der Products that are and have ever been manufactured in China are belts, which have not and/or are not being sold by any of the Merchant Defendants.

in Class 25; 97/141,391 "" for a variety of goods in Classes 9 and 41; 90/271,508 "

**SP5WOM** " for a variety of goods in Class 25; 90/183,210 "        " for a variety of goods

in Class 25; and 97/141,416 "        " for a variety of goods in Classes 9 and 41.  True

and correct copies of the registrations and applications for the Sp5der Marks are attached hereto as **Exhibit**

**B** and incorporated herein by reference.

21.    The Sp5der Marks are currently in use in commerce in connection with the Sp5der

Products.  The Sp5der Marks were first used in commerce on or before the dates of first use as reflected

in the respective registrations attached hereto as **Exhibit B**.

22.    The success of the Sp5der Products is due in part to King Spider's marketing and

promotional efforts. These efforts include advertising and promotion through social media, King Spider's

website (available at https://kingspider.co) and print and internet-based advertising.

23.    King Spider's success is also due to its use of the highest quality materials and processes

in making the Sp5der Products.

24.    Additionally, King Spider owes a substantial amount of the success of the Sp5der Products

to its consumers and word-of-mouth buzz that its consumers have generated.

25.    King Spider's efforts, the quality of King Spider's products and the word-of-mouth buzz

generated by its consumers have made the Sp5der Marks and Sp5der Products prominently placed in the

minds of the public. Members of the public and retailers have become familiar with the Sp5der Marks and

Sp5der Products and have come to associate them exclusively with Sp5der.  King Spider has acquired a

valuable reputation and goodwill among the public as a result of such associations.

26.     King Spider has gone to great lengths to protect its interests in the Sp5der Products and the Sp5der Marks.  No one other than King Spider is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Sp5der Marks, or use the Sp5der Marks in connection with goods or services or otherwise, without the express permission of King Spider.

<u>**Alibaba Defendants and Merchant Defendants' User Accounts**</u>

27.     Alibaba, which is owned, controlled and operated by Alibaba.com Hong Kong and Alibaba.com Singapore, and AliExpress, which is owned, controlled and operated by AliExpress E-Commerce, are online marketplace and e-commerce platforms that allow manufacturers, wholesalers and other third-party merchants, like Merchant Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

28.     As leaders in China's e-commerce and digital retail market, Alibaba and AliExpress have generated hundreds of billions in sales worldwide, and in the recent fiscal year ending March 31, 2022, generated \$134.5 billion.[3]  International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress.  For example, in 2016, revenue from international retail sales grew by 25% on AliExpress to \$342 million and 15% on Alibaba to \$841 million.[4]

29.     In the fiscal year ending on March 31, 2021, Alibaba's revenue was \$109.48 billion, an increase of 41% year-over-year.[5]

30.     The press reported that the growth in sales on AliExpress resulted from an increase in

---

[3] *See* Yihan Ma, *Annual Revenue of Alibaba Group From Financial Year 2012-2022*, STATISTA (Jul. 27, 2022), https://www.statista.com/statistics/225614/net-revenue-of-alibaba/; Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, \$910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

[4] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales*, DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.

[5] *Alibaba Group Announces March Quarter and Full Fiscal Year 2021 Results*, SEC.GOV (May 13, 2021) https://www.sec.gov/Archives/edgar/data/1577552/000110465921065916/tm2116252d1_ex99-1.htm

the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[6]

31.    Additionally, according to Business Insider, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[7]  In 2021, Alibaba set a new Singles Day record with $84.5 billion in sales across the eleven (11) day event.[8]

32.    The Alibaba Defendants declined to share their total sales for Singles Day 2022; however, indicated that sales were "in line" with the $84.5 billion reported in 2021.[9]

33.    As addressed in the Wall Street Journal, Fortune and the New York Times,[10] and as reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on Alibaba and AliExpress,[11] an astronomical number of counterfeit and infringing products are offered for sale and sold on Alibaba and AliExpress, as well as other online marketplace

---

[6] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China*, DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[7] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[8] Dan Berthiaume, *Alibaba sets new Singles Day record with $84.5 billion in sales*, CHAIN STORE AGE (Nov. 11, 2021), https://chainstoreage.com/alibaba-sets-new-singles-day-record-845-billion-sales.

[9] Evelyn Cheng, *Alibaba says 15% of China delivery areas were disrupted during Singles Day shopping festival*, CNBC (Nov. 17, 2022) https://www.cnbc.com/2022/11/18/alibaba-says-15percent-of-china-delivery-areas-were-disrupted-during-singles-day.html.

[10] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes,* N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[11] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba,* MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

platforms, at a rampant rate.

34.    Additionally, the Office of the United States Trade Representative ("USTR") publishes an annual "Notorious Markets List" which highlights specific physical and online markets around the world that are reported to be engaging in and facilitating substantial copyright piracy and trademark counterfeiting, and which is intended to help the U.S. and foreign governments prioritize intellectual property rights (IPR) enforcement that protects job-supporting innovation and creativity in the U.S. and around the world.[12]

35.    In December 2016, the USTR added Alibaba to its "Notorious Markets" list due to its high levels of "reported counterfeiting and piracy."[13]

36.    In February of 2022, the Office of the United States Trade Representative ("USTR") added AliExpress to its list of 2021 "notorious markets", which are "markets that reportedly facilitate substantial trademark counterfeiting."[14]

37.    On January 31, 2023, the USTR released its 2022 Review of Notorious Markets for Counterfeiting and Piracy, and AliExpress was again designated a "notorious market".[15] The USTR specifically noted that a "key concern of right holders is that penalties for repeat infringers do not stop counterfeit sellers on AliExpress from remaining on the market, such as by operating multiple

---

[12] *See* Press Release, Office of the United States Trade Representative, USTR Releases 2020 Review of Notorious Markets for Counterfeiting and Piracy (Jan. 2021), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2021/january/ustr-releases-2020-review-notorious-markets-counterfeiting-and-piracy; Office of The United States Trade Representative, 2020 Review of Notorious Markets for Counterfeiting and Piracy (2020), *available at* https://ustr.gov/sites/default/files/files/Press/Releases/2020%20Review%20of%20Notorious%20Markets%20for%20Counterfeiting%20and%20Piracy%20(final).pdf.
[13] Laura Stevens, *Alibaba Lands on U.S. Governments' 'Notorious Markets' List for Fakes,* WALL STREET JOURNAL (Dec. 21, 2016), https://www.wsj.com/articles/alibaba-lands-on-u-s-governments-notorious-markets-list-for-fakes-1482356081; *see also Alibaba Lands on U.S. Notorious Markets List for Lax Counterfeit Policies*, CHINATECHNEWS (Dec. 22, 2016), https://www.chinatechnews.com/2016/12/22/24615-alibaba-lands-on-u-s-notorious-markets-list-for-lax-counterfeit-policies.
[14] Michelle Toh, *The US accuses Tencent and Alibaba of letting sellers traffic fake goods*, CNN (Feb. 18, 2022) https://www.cnn.com/2022/02/17/business/china-tencent-alibaba-notorious-markets-list-intl-hnk/index.html.
[15] USTR Releases 2022 Review of Notorious Markets for Counterfeiting and Piracy, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE (Jan. 31, 2023), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy.

accounts.[16]

38.    Merchant Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Alibaba and AliExpress, as well as potentially yet undiscovered additional online marketplace platforms.

39.    Through their Merchant Storefronts, Merchant Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

40.    Merchant Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

41.    The Merchant Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

**Merchant Defendants' Wrongful and Infringing Conduct**

42.    Particularly in light of Plaintiff's success with its Sp5der Products, as well as the reputation they have gained, and the scarcity of the Sp5der Products due to King Spider's limited Drops of the Sp5der Products, Plaintiff and its Sp5der Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Sp5der Products and Sp5der Marks and Plaintiff investigates and enforces against such activities.

43.    As part of these efforts, Plaintiff authorized Epstein Drangel to investigate and research

---

[16] *Id.*

manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on Alibaba and AliExpress.

44.    Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of the Merchant Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Merchant Defendants' User Accounts and Merchant Storefronts.  Screenshots of Infringing Listings from Merchant Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference.

45.    Merchant Defendants are not, and have never been, authorized by Plaintiff to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Sp5der Products or to use the Sp5der Marks, or any marks that are confusingly similar to the Sp5der Marks.

46.    Merchant Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Sp5der Products, only with minor variations that no ordinary consumer would recognize.

47.    During its investigation, Epstein Drangel identified Merchant Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Merchant Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Merchant Defendants' Merchant Storefronts reflecting that the Merchant Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit C**.

48.    Epstein Drangel confirmed that each Merchant Defendant were and/or are currently offering for sale and/or selling Counterfeit Products through their respective Merchant User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that

each Merchant Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit C**.

49.    For example, below on the left is an image of one of Plaintiff's Sp5der Products. Depicted further below is a listing for Merchant Defendant AT666 Store's Counterfeit Product ("AT666 Store Infringing Listing" and "AT666 Store Counterfeit Product," respectively).  The AT666 Store Infringing Listing appears on Merchant Defendant AT666 Store's Merchant Storefront, https://www.aliexpress.com/store/1101922529, and offers the AT666 Store Counterfeit Product for $30.43 per item, using, featuring and/or incorporating the Sp5der Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing.  Further, the AT666 Store Counterfeit Product is virtually identical to one of Plaintiff's Sp5der Products and features and/or incorporates the Sp5der Marks.  There is no question that the AT666 Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Sp5der Products or that the AT666 Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Sp5der Marks:

13

**Sp5der Product**                                    **Defendant's Counterfeit Product**

                                  

50.     By way of another example, below on the left is an image of one of Plaintiff's Sp5der

Products.  Depicted further below is a listing for Merchant Defendant Babyoung Clothing 2nd Store's

Counterfeit Product ("Babyoung Clothing 2nd Store Infringing Listing" and "Babyoung Clothing 2nd

Store Counterfeit Product," respectively).  The Babyoung Clothing 2nd Store Infringing Listing appears

on    Merchant    Defendant    Babyoung    Clothing    2nd    Store's    Merchant    Storefront,

https://www.aliexpress.com/store/1102565354,    and    offers    the    Babyoung    Clothing    2nd    Store

Counterfeit Product for $44.13 per item, using, featuring and/or incorporating the Sp5der Marks and/or

confusingly similar marks in the descriptions and/or product images in the body of the listing.  Further,

the Babyoung Clothing 2nd Store Counterfeit Product is virtually identical to one of Plaintiff's Sp5der

Products and features and/or incorporates the Sp5der Marks.  There is no question that the Babyoung

Clothing 2nd Store Counterfeit Product is designed to confuse and mislead consumers into believing

that they are purchasing one of Plaintiff's Sp5der Products or that the Babyoung Clothing 2nd Store

Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the

goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Sp5der Marks

14

**Sp5der Product**                     **Defendant's Counterfeit Product**

                     

51.     As another example, below on the left is an image of one of Plaintiff's Sp5der Products. Depicted further below is a listing for Merchant Defendant Bang For Buck Store's Counterfeit Product ("Bang For Buck Store Infringing Listing" and "Bang For Buck Store Counterfeit Product," respectively). The Bang For Buck Store Infringing Listing appears on Merchant Defendant Bang For Buck Store's Merchant Storefront, https://www.aliexpress.com/store/1102252509, and offers the Bang For Buck Store Counterfeit Product for $38.56 per item, using, featuring and/or incorporating the Sp5der Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing. Further, the Bang For Buck Store Counterfeit Product is virtually identical to one of Plaintiff's Sp5der Products and features and/or incorporates the Sp5der Marks. There is no question that Bang For Buck Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Sp5der Products or that the Bang For Buck Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Sp5der Marks:

**Sp5der Product**                              **Defendant's Counterfeit Product**

                              

52.    By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Merchant Defendants violated Plaintiff's exclusive rights in the Sp5der Marks, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Sp5der Marks in order to confuse consumers into believing that such Counterfeit Products are the Sp5der Products and aid in the promotion and sales of their Counterfeit Products.  Merchant Defendants' conduct began long after Plaintiff's adoption and use of the Sp5der Marks, after Plaintiff obtained federal registrations in the Sp5der Marks, as alleged above, and after Plaintiff's Sp5der Products and Sp5der Marks became well-known to the purchasing public.

53.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, all Defendants had knowledge of Plaintiff's ownership of the Sp5der Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Sp5der Products, of the scarcity of the Sp5der Products due to the limited Drops and in bad faith adopted the Sp5der Marks.

16

54.     Merchant Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, its Sp5der Marks and Sp5der Products.

55.     Merchant Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

56.     By engaging in these actions, Merchant Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Sp5der Marks, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

57.     Unless enjoined, Merchant Defendants will continue to cause irreparable harm to Plaintiff.

### The Alibaba Defendants' Wrongful and Infringing Conduct

58.     On May 2, 2023, the Court in this Action granted Plaintiff's Application and entered the Temporary Restraining Order ("TRO").

59.     Alibaba and AliExpress require Plaintiff to pay $25.00 (recently raised to $40.00) per Defendant for processing of any temporary restraining order.

60.     On the same day, May 2, 2023, in accordance with the alternative methods of service authorized by the TRO, Epstein Drangel served the TRO on Alibaba and AliExpress and wired $1,650.00 ($25.00 x 66 Merchant Defendants) to Alibaba and AliExpress for processing of the TRO in this Action.

61.     Therefore, Alibaba and AliExpress were made aware of Plaintiff's Sp5der Marks and the fact that absolutely no authentic Sp5der Products are manufactured in or sold from China and absolutely no authentic Sp5der Products are authorized to be sold by the Merchant Defendants at least as early as May 2, 2023 when Plaintiff served the TRO on Alibaba and AliExpress.

62.     On May 15, 2023, via e-mail, Epstein Drangel again advised Alibaba and AliExpress that absolutely no authentic Sp5der Products are sold in or sold from China and absolutely no authentic Sp5der Products are authorized to be sold by the Merchant Defendants, and further, that there should be no Sp5der Products sold on the Alibaba Platforms whatsoever.

63.     On May 30, 2023, the Court entered the Preliminary Injunction Order ("PI Order").

64.     On May 31, 2023, in accordance with the alternative methods of service authorized by the TRO, Epstein Drangel served the PI Order on Alibaba and AliExpress.

65.     Despite being made specifically aware of the Original Merchant Defendants and of Original Merchant Defendants' infringing and counterfeiting activities and listings, and being specifically directed by this Court on numerous occasions to restrain all Original Merchant Defendants' Merchant Storefronts, Alibaba and AliExpress not only continued to allow Original Merchant Defendants to continue to sell Counterfeit Products, but also aided and abetted Merchant Defendants in selling Counterfeit Products in various ways, as further alleged herein.

66.     On May 31, 2023, Epstein Drangel began a new investigation of sellers on Alibaba and AliExpress offering for sale and/or selling Counterfeit Products ("May 2023 Investigation").

67.     In the course of the May 2023 Investigation, Epstein Drangel discovered that the following seven (7) Merchant Defendants named in this action were still selling Counterfeit Products on AliExpress in direct violation of the TRO and PI Order: ALICEJULY Store, Babyoung Clothing 2nd Store, Babyoung Clothing 3th Store, Premium Custom Luxury Store, Shop4411017 Store,

Shop1102709057 Store and Zhuo Yue Fashion Store.

68.     On July 10, 2023, Epstein Drangel began another new investigation of sellers on Alibaba and AliExpress offering for sale and/or selling Counterfeit Products ("July 2023 Investigation").

69.     In the course of the July 2023 Investigation, Epstein Drangel discovered that one (1) Merchant Defendant, FFOG Store, was still selling Counterfeit Products on AliExpress in direct violation of the TRO and PI Order.

70.     On August 9, 2023, Epstein Drangel began another new investigation of sellers on Alibaba and AliExpress offering for sale and/or selling Counterfeit Products ("August 2023 Investigation").

71.     In the course of the August 2023 Investigation, Epstein Drangel discovered that two (2) Original Merchant Defendants, Babyoung Clothing 3th Store and FFOG Store, were still selling Counterfeit Products on AliExpress in direct violation of the TRO and PI Order.

72.     Despite the TRO and PI Order entered in this Action, Alibaba and AliExpress continued and/or continue to provide services, including, without limitation marketplace, advertising, and other essential services necessary for counterfeiters like Merchant Defendants to sell their Counterfeit Products to customers in the United States to the above-referenced eight (8) Original Merchant Defendants, among others, thereby allowing them to sell Counterfeit Products.

73.     In its May 6, 2014, Form F-1, Alibaba Group stated that merchants "rely on our platform for a range of essential support services to operate their businesses."[17]  Among other essential services, Alibaba Group provides "[w]eb based and mobile interfaces to manage listings, orders and customer relationship as well as cloud computing services for their enterprise resource planning…and client

---

[17] Alibaba Group Holding Limited Form F-1 Registration Statement, filed with the United States Securities and Exchange Commission on May 6, 2014 ("F-1"), available at https://www.sec.gov/Archives/edgar/data/1577552/000119312514341794/d709111df1a.htm, at p. 138.

relationship management…"

74.    The Form F-1 further states that Alibaba Group's "data analytic and data management capabilities allow us to anticipate buyer needs and tailor product offering displays, matching buyers with the most relevant merchants."[18]    Alibaba Group helps its merchants, including Merchant Defendants, attract customers by maintaining databases containing "transactional and user behavior data generated on [the Alibaba Group] marketplaces" that allow Alibaba Group to "construct a powerful search engine that generates personalized results."[19]  Alibaba Group uses this technology to "continuously improve the effectiveness of [their] online marketing services for [the Alibaba Group's] sellers through the use of aggregated behavioral targeting data and analytics."[20]

75.    The Alibaba Group 2022 Annual Report ("AGHAR") states that Alibaba Group "generate[s] revenue from merchants by leveraging our consumer insights and data technologies which enable brands and merchants to attract, engage and retain consumers, complete transactions, improve their branding, enhance operating efficiency, and offer various services."[21]

76.    The AGHAR additionally indicates that it "derive[s] a majority of [its] China commerce retail revenue from customer management, which primarily consists of (a) P4P marketing services, where merchants primarily bid for keywords that match product or service listings appearing in search results through our online auction system on a cost-per-click (CPC) basis. We provide these services directly on our marketplaces or through collaboration with third-party affiliates." AGHAR, p. 118.

77.    Alibaba Group additionally states that its "revenue from commission is mainly contributed by transactions on AliExpress, where merchants typically pay 5% to 8% of the transaction

---

[18] F-1 at p. 137.
[19] F-1 at p. 169.
[20] *Id.*
[21] *Alibaba Group Holding Limited Fiscal Year 2022 Annual Report* (last visited March 13, 2023), https://doc.irasia.com/listco/hk/alibabagroup/annual/2022/ar2022.pdf, *see*, p. 117.

value…" AGHAR, p. 119.

78.     According to Alibaba's website, a "Gold Supplier is a premium membership for suppliers on Alibaba. Members are provided with comprehensive ways to promote their products, maximizing product exposure and increasing return-on-investment."[22]

79.     The AGHAR states that "[s]ellers on Alibaba.com may purchase an annual Gold Supplier membership to reach customers, provide quotations and transact on the marketplace. As of March 31, 2022, Alibaba.com had over 245,000 paying members from China and around the world. Sellers may also purchase additional value-added services to manage product listings and facilitate transaction processes, such as upgraded storefront management tools, CRM SaaS services, P4P marketing services, trade assurance and fulfillment services, mainly including logistics and custom clearing services. In the twelve months ended March 31, 2022, value-added services contributed the majority of Alibaba.com's total revenue." AGHAR, p. 55.

80.     In addition to the services Alibaba continues to provide to its Gold Suppliers, the AGHAR states that Alibaba provides merchants with services including "connect[ing] Chinese and overseas suppliers to overseas wholesale buyers, who are typically trade agents, wholesalers, retailers, manufacturers and SMEs engaged in the import and export business, and provides sourcing, online transaction, digital marketing, digital supply chain fulfillment and financial services to them." Id.

81.     The following twenty-seven (27) Merchant Defendants are "Gold Suppliers": Dongguan Qicheng Garment Co., Ltd., Dongguan Ramax Fashion Co., Ltd., Dongguan Shian Technology Co., Ltd., Dongguan Xingmai Apparel Co., Ltd., Dongguan Xinyi Clothing Co., Ltd., Dongguan Yijia Clothing Co., Ltd., Foshan Chancheng Youku Shoe Firm, Guangzhou Baoyue Garment Co., Ltd., Guangzhou Boxu Trading Co., Ltd., Guangzhou Fansheng Trade Co., Ltd., Guangzhou Healy Apparel

---

[22] *What is a Gold Supplier?*, ALIBABA.COM (last visited March 1, 2023) https://www.alibaba.com/help/gold_supplier.html.

Co., Ltd., Guangzhou Jiezhan Trading Co., Limited, Guangzhou Luosi International Trading Co., Ltd.,

Guangzhou Yuhaotong Trading Co., Ltd., Hubei Hui Li Apparel Co., Ltd., Jiangsu Keying Technology

Co., Ltd., Jiangxi Yi Lingzhi Clothing Co., Ltd., Jiangxi Yilile Imp.& Exp. Co., Ltd., Nanchang Daili

Clothing Co., Ltd., Quanzhou Best Supply Chain Management Co., Ltd., Shaoxing Jinguo

Garment&Furnishings Co.,Ltd, Shenzhen Chaotian Trade Co., Ltd., Shenzhen Oti Textile Technology

Co., Ltd., Xiamen Lingyao Technology Co., Ltd., Xiamen Xiaotian Twilight Technology Co., Ltd.,

Xiamen Yiyuansen Trading Co., Ltd. and Yiwu Partyland Costumes Co., Ltd.

82.     Certain merchants on Alibaba are listed as "Verified" or "Assessed Suppliers".

83.     The Alibaba Defendants state on Alibaba that "Verified Supplier is the membership tier

for high-quality suppliers on Alibaba. This exclusive designation is meant to create more trust amongst

buyers."   The "Verified Supplier" designation also allows these suppliers to become "4 of 5 star

suppliers and receive a traffic boost on featured products for 6 months…They also receive 60 showcase

spots to boost product listings in the search results."[23]

84.     According to the Alibaba Defendants, "Assessed Suppliers" are suppliers verified by

"the world's leading inspection companies" including Bureau Veritas, TuV SuD, SGS and TuV

Rheinland.[24]

85.     "Verified" suppliers Merchant Storefronts contain a video and photographs taken at

their factories, which note "Verified by Alibaba" at the top left corner.

86.     The following fifteen (15) Merchant Defendants are "Verified" suppliers on Alibaba:

Dongguan Ramax Fashion Co., Ltd., Dongguan Qicheng Garment Co., Ltd., Dongguan Shian

---

[23]    *What is a verified Supplier on Alibaba.com?*, ALIBABA.COM    (Aug.    29,    2022)
https://seller.alibaba.com/businessblogs/px001z0dr-what-is-a-verified-supplier-on-alibabacom.
[24]                         *Assessed         Suppliers*,                         ALIBABA.COM
https://activities.alibaba.com/alibaba/about_assessed_supplier.php?spm=5386.1599790.1998355790.11.nxtJam&tracelog=
home_vs_sa (last accessed March 13, 2023).

Technology Co., Ltd., Dongguan Xingmai Apparel Co., Ltd., Dongguan Xinyi Clothing Co., Ltd., Dongguan Yijia Clothing Co., Ltd., Guangzhou Jiezhan Trading Co., Limited, Guangzhou Healy Apparel Co., Ltd., Guangzhou Yuhaotong Trading Co., Ltd., Hubei Hui Li Apparel Co., Ltd., Jiangxi Yi Lingzhi Clothing Co., Ltd., Nanchang Daili Clothing Co., Ltd., Quanzhou Best Supply Chain Management Co., Ltd., Shenzhen Oti Textile Technology Co., Ltd. and Yiwu Partyland Costumes Co., Ltd.

87.     As of August 9, 2023, a search for "Sp5der" on Alibaba yields at least forty-five (45) Infringing Listings and a search for "Sp5der" on AliExpress yields at least fifteen (15) Infringing Listings.

88.     When several of the Infringing Listings are clicked, Alibaba and AliExpress additionally promote other merchants' Counterfeit Products under a header "You may also like," as depicted in the non-exhaustive examples below from New Merchant Defendants Guangzhou Fansheng Trade Co., Ltd. on Alibaba and Guangxi Yulin Bisen Foreign Trade Service Co., Ltd. on AliExpress, respectively:





89.     Upon information and belief, the Alibaba Defendants have sold, and continue to sell, keywords to counterfeiters, including Merchant Defendants, comprised of Plaintiff's Sp5der Marks. These keywords have assisted counterfeiters, including Merchant Defendants, in attracting consumers to their Infringing Listings.

90.     After the entrance of the TRO and PI Order, the Alibaba Defendants provided services, including, at the very least, the services necessary to re-list Counterfeit Products for sale, keyword and sponsorship services to Original Merchant Defendants in violation of the TRO and PI Order.

91.     In connection with its May 2023 Investigation, on May 31, 2023, Epstein Drangel entered the word "Sp5der" into the Google search engine, and the below sponsored advertisement for Counterfeit Products on Alibaba appeared:



92.    Generally, the above type of sponsored advertisement only results when third parties, i.e. the Alibaba Defendants here, bid on and/or purchase keywords, such as "Sp5der" here, on Google.

93.    When clicking on the "My Ad Center" option (the three vertical dots next to the sponsored advertisement), Google displays information identifying the advertiser that paid for the keyword.

94.    As depicted below, for the sponsored Google advertisement for Counterfeit Products on Alibaba, the advertiser is identified as Alibaba.com Hong Kong, meaning, Defendant Alibaba.com Hong Kong bid and paid for the keyword on Google.



95.     As depicted above, the advertiser, i.e. Defendant Alibaba.com Hong Kong, was verified by Google, and for this designation to appear, Google requires the advertiser to provide a "registration document", including, but not limited to, a document issued by the IRS, an SEC filing or a Certificate of Business Incorporation to verify the identity of the company or individual that paid for the advertisement.[25]

96.     On July 26, 2023, Epstein Drangel discovered a sponsored advertisement for Counterfeit Products being sold on AliExpress.com on both YouTube.com ("YouTube") and NJ.com, and when Epstein Drangel clicked on the "My Ad Center" options on YouTube and NJ.com, the advertiser was identified as Defendant Alibaba.com Singapore as depicted below:

---

[25] *Document requirements for advertiser identity verification*, GOOGLE.COM (last visited August 8, 2023), https://support.google.com/adspolicy/answer/9872280#zippy=%2Cacceptable-documents-by-location.





97.    When clicking the sponsored advertisement on either YouTube or NJ.com, Epstein Drangel was directed to an abbreviated version of an Infringing Listing:





98.     When clicking the above depicted abbreviated listing, Epstein Drangel was directed to the below page on AliExpress, which is Original Merchant Defendant Babyoung Clothing 2nd Store's Infringing Listing:





99.     On July 28, 2023, Epstein Drangel discovered that the aforementioned sponsored

Google advertisement for Counterfeit Products on Alibaba, discussed in paragraphs 91-95 herein, is still active, and when Epstein Drangel clicked on the "My Ad Center" option, the advertiser was still identified as Defendant Alibaba.com Hong Kong:



100.    Further, on the same day, July 28, 2023, Epstein Drangel discovered a sponsored Google advertisement for Counterfeit Products on AliExpress, and when Epstein Drangel clicked on the "My Ad Center" option, the advertiser was identified as Defendant Alibaba.com Singapore as depicted below:



101.     As of at least August 1, 2023, the aforementioned sponsored Google advertisement for Counterfeit Products on AliExpress, discussed in paragraph 100 herein, was still active, and when Epstein Drangel clicked on the "My Ad Center" option, the advertiser was still identified as Defendant Alibaba.com Singapore as depicted below:



102.    In connection with its August 2023 Investigation, on August 9, 2023, Epstein Drangel discovered an additional sponsored Google advertisement for Counterfeit Products on Alibaba, and when Epstein Drangel clicked on the "My Ad Center" option, the advertiser was identified as Defendant Alibaba.com Singapore as depicted below:



103.    During the course of the August 2023 Investigation, Plaintiff discovered some of the New Merchant Defendants through the sponsored advertisements owned by one or more of the Alibaba Defendants, which directly promoted many of the New Merchant Defendants' Infringing Listings. For example, on August 22, 2023, a search for "Sp5der AliExpress" on Google.com led to the below advertisements, which advertised Counterfeit Products offered for sale by five (5) of the New Merchant Defendants, namely, Goddess of luck Store, QUE LA FAMIL LE Store, Romantic House 24 Store and Women Clothes Factory Store:



104.    In addition to discovering New Merchant Defendants' Infringing Listings via the sponsored advertisements discussed at paragraph 103 herein, Epstein Drangel's investigation uncovered New Merchant Defendants via routine investigation on Alibaba and AliExpress that were unknown to Plaintiff at the time it filed Plaintiff's Complaint.

105.    In addition to providing services to the Original Merchant Defendants in direct violation of the TRO and PI Order, the Alibaba Defendants are themselves paying for keywords on Google, using the Sp5der Marks to promote the sale of Counterfeit Products on the Alibaba Platforms.

106.    Despite Plaintiff's efforts in bringing to the Alibaba and AliExpress' attention that certain Original Merchant Defendants were listing Counterfeit Products for sale after the entrance of the TRO, Alibaba and AliExpress have knowingly continued to provide their services which are essential to Original Merchant Defendants' continued infringing and counterfeiting activities, to such Original Merchant Defendants.

107.    Alibaba and AliExpress have allowed and encouraged numerous counterfeiters, including but not limited to the Merchant Defendants herein, to operate and/or continue to operate on the Alibaba Platforms, even after Alibaba and AliExpress were expressly informed that its merchants, including several Merchant Defendants, were selling Counterfeit Products and that there were absolutely no authentic Sp5der Products ever sold on Alibaba, AliExpress or in or from China.

108.    In addition, Alibaba and AliExpress, through AliPay, also process payments for the sale of products, including Counterfeit Products, on the Alibaba Platforms.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Trademark Counterfeiting Against Merchant Defendants)
### [15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]

109.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

110.    Plaintiff is the exclusive owner of all right and title to the Sp5der Marks.

111.    Plaintiff has continuously used the Sp5der Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as Exhibit B.

112.    Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known

and prior rights in its Sp5der Marks and with knowledge that Merchant Defendants' Counterfeit Products bear counterfeit marks, Merchant Defendants intentionally reproduced, copied and/or colorably imitated the Sp5der Marks and/or used spurious designations that are identical with, or indistinguishable from, the Sp5der Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

113.    Merchant Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Sp5der Marks through their participation in such activities.

114.    Merchant Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Sp5der Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Merchant Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Merchant Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

115.    Merchant Defendants' unauthorized use of the Sp5der Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the

incalculable goodwill inherent in the Sp5der Marks.

116.    Merchant Defendants' actions constitute willful counterfeiting of the Sp5der Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

117.    As a direct and proximate result of Merchant Defendants' illegal actions alleged herein, Merchant Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Sp5der Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Sp5der Marks.

118.    Based on Merchant Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Merchant Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
**(Infringement of Registered Trademarks Against Merchant Defendants)**
**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

119.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

120.    Plaintiff has continuously used the Sp5der Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

121.    Plaintiff, as owner of all right, title and interest in and to the Sp5der Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

122.    Merchant Defendants were, at the time they engaged in their actions as alleged herein,

actually aware that Plaintiff is the owner of the federal trademark registrations for the Sp5der Marks.

123.    Merchant Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Sp5der Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Sp5der Products and/or related products bearing the Sp5der Marks into the stream of commerce.

124.    Merchant Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Sp5der Marks and/or which are identical or confusingly similar to the Sp5der Marks.

125.    Merchant Defendants knowingly and intentionally reproduced, copied and colorably imitated the Sp5der Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

126.    Merchant Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Sp5der Marks.

127.    Merchant Defendants' egregious and intentional use of the Sp5der Marks in commerce on or in connection with Merchant Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Merchant Defendants' Counterfeit Products are Plaintiff's Sp5der

Products or are otherwise associated with, or authorized by, Plaintiff.

128.    Merchant Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Sp5der Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

129.    Merchant Defendants' continued, knowing, and intentional use of the Sp5der Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Sp5der Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

130.    As a direct and proximate result of Merchant Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Sp5der Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Merchant Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Sp5der Marks.

131.    Based on Merchant Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Merchant Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (Infringement of Unregistered Trademarks Against Merchant Defendants)
### [15 U.S.C. § 1125/Lanham Act § 43(a)]

132.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

133.    Plaintiff has continuously used the Sp5der Marks in interstate commerce since on or

before the dates of first use as reflected in the Sp5der Applications attached hereto as Exhibit B.

134. Plaintiff, as the owner of all right, title and interest in and to the Sp5der Marks and Sp5der Applications, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

135. Merchant Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the Sp5der Marks.

136. Merchant Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Plaintiff, as the trademark owner of the Sp5der Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Sp5der Products and/or related products bearing the Sp5der Marks into the stream of commerce.

137. Merchant Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing and/or utilizing marks that are reproductions, copies and/or colorable imitations of the Sp5der Applications and/or which are identical or confusingly similar to the Sp5der Marks.

138. Merchant Defendants knowingly and intentionally reproduced, copied and colorably imitated the Sp5der Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

139. Merchant Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Sp5der Marks.

140. Merchant Defendants' egregious and intentional use of the Sp5der Marks in commerce

on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Sp5der Products or are otherwise associated with or authorized by Plaintiff.

141.    Merchant Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Sp5der Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

142.    Merchant Defendants' continued, knowing and intentional use of the Sp5der Marks without Plaintiff's consent or authorization constitutes intentional infringement of the Sp5der Marks in violation of §43 of the Lanham Act, 15 U.S.C. § 1125.

143.    As a direct and proximate result of Merchant Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Sp5der Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Merchant Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Sp5der Marks.

144.    Based on Merchant Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition Against Merchant Defendants)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

145.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

146.    Plaintiff, as the owner of all right, title and interest in and to the Sp5der Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

147.    The Sp5der Marks are inherently distinctive and/or have acquired distinctiveness.

148.    Merchant Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Sp5der Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Merchant Defendants' substandard Counterfeit Products are Sp5der Products or related products, and/or that Merchant Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Merchant Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Merchant Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Sp5der Marks, to Merchant Defendants' substantial profit in blatant disregard of Plaintiff's rights.

149.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Sp5der

Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Sp5der Marks, Merchant Defendants have traded off the extensive goodwill of Plaintiff and its Sp5der Products and did in fact induce, and intend to, and will continue to induce customers to purchase Merchant Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Merchant Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Sp5der Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

150. Merchant Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Sp5der Marks would cause confusion, mistake or deception among purchasers, users and the public.

151. Upon information and belief, Merchant Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff's Sp5der Products and Sp5der Marks.

152. As a direct and proximate result of Merchant Defendants' aforementioned actions, Merchant Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Sp5der Products and by depriving Plaintiff of the value of its Sp5der Marks as a commercial asset in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Merchant Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Sp5der Marks.

153.    Based on Merchant Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Merchant Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Unfair Competition Against Merchant Defendants)**
**[New York Common Law]**

154.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

155.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Merchant Defendants have traded off the extensive goodwill of Plaintiff and its Sp5der Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Merchant Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

156.    Merchant Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Merchant Defendants' Counterfeit Products.

157.    Merchant Defendants knew, or by the exercise of reasonable care should have known,

that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

158.    Upon information and belief, Merchant Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Merchant Defendants.

159.    As a direct and proximate result of Merchant Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Sp5der Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Sp5der Marks as a commercial asset in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

160.    As a result of Merchant Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Merchant Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Merchant Defendants' intentional misconduct.

### SIXTH CAUSE OF ACTION
**(Contributory Trademark Infringement and Counterfeiting Under the Lanham Act)**
**(Against Alibaba Defendants)**

161.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

162.    Plaintiff is the exclusive owner of all right and title to the Sp5der Marks.

163.    Plaintiff has continually used the Sp5der Marks in interstate commerce since on or

before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

164.    Without Plaintiff's permission, authorization or consent, Merchant Defendants and other merchants on the Alibaba Platforms have knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products on the Alibaba Platforms, among other channels of trade, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of Plaintiff's Sp5der Marks and/or which are identical or confusingly similar to Plaintiff's Sp5der Marks.  As a result, and as detailed above, the Merchant Defendants are liable for direct trademark infringement of the Sp5der Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 and willful counterfeiting of the Sp5der Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

165.    Plaintiff and Epstein Drangel specifically put the Alibaba Defendants on notice of Plaintiff's Sp5der Products and Sp5der Marks.

166.    Plaintiff served the TRO and PI Order entered in this Action on the Alibaba Defendants on May 2, 2023 and May 31, 2023, respectively.

167.    With full knowledge (constructive through Plaintiff's federal registrations and actual through Plaintiff and Epstein Drangel's efforts listed above) of Plaintiff's rights in the Sp5der Marks and the goodwill associated therewith, the Alibaba Defendants have encouraged, enabled, facilitated, substantially participated in and/or materially contributed to the Merchant Defendants' illegal, infringing and/or counterfeiting activities by providing their Alibaba Platforms and Alibaba services, which include, without limitation: shipping, marketing, advertising, payment processing, and other essential services, and have generated significant income directly from the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities which include, without limitation, the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display,

offering for sale and/or sale of Counterfeit Products.

168.    The Alibaba Defendants had and/or have actual knowledge of Merchant Defendants'
and other merchants' illegal infringing and counterfeiting activities through, among other notice:
Plaintiff and Epstein Drangel's communications with the Alibaba Defendants, the TRO and PI Order
entered in this Action, the widespread press coverage of the rampant counterfeiting and infringing
activities occurring on the Alibaba Platforms and actions taken by multiple brands to curtail the
infringement and counterfeiting occurring on the Alibaba Platforms, which collectively put the Alibaba
Defendants on notice of specific Counterfeit Products and/or Infringing Listings therefor and of
Counterfeit Products and/or Infringing Listings and/or other listings that will infringe in the future,
and/or the Alibaba Defendants were, and are, as a provider of essential services relating to the Alibaba
Platforms, in the unique position of having sufficient information to identify Counterfeit Products as
well as merchants, including the Merchant Defendants responsible therefor, with specificity, and to
control and monitor Merchant Defendants' and other merchants' listings.

169.    Despite overwhelming notice and knowledge of the Merchant Defendants' and other
merchants' illegal, infringing and counterfeiting activities, of particular Counterfeit Products and/or
Infringing Listings and of Counterfeit Products and/or listings that will infringe in the future, as well as
of its own encouragement, enabling, facilitation, substantial participation in and/or material
contribution to the same, the Alibaba Defendants have deliberately or recklessly disregarded such
notifications and/or such illegal, infringing and counterfeiting activities, and/or has otherwise been
willfully blind to and/or consciously avoided learning about, the full extent of the such illegal, infringing
and counterfeiting activities occurring on the Alibaba Platforms and/or declined to exercise their right
and ability to stop the same.

170.    By providing essential services relating to the Alibaba Platforms to the Merchant

Defendants and other merchants, the Alibaba Defendants supplied and controlled, and continue to supply and control, the instrumentality for the Merchant Defendants' and other merchants' infringing and counterfeiting activities, including the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, and the Alibaba Defendants received a direct financial benefit from providing such services.

171.    The Alibaba Defendants' egregious, knowing and intentional contribution to the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities alleged herein has caused, and is likely to continue to cause, actual confusion, to cause mistake and to deceive the general purchasing public as to the source, origin or sponsorship of the Counterfeit Products, and is likely to deceive the public into believing that the Counterfeit Products sold by the Merchant Defendants and other merchants on the Alibaba Platforms are Plaintiff's Sp5der Products or are otherwise associated with, or authorized by, Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

172.    The Alibaba Defendants are therefore contributorily liable for the infringement and counterfeiting of Plaintiff's Sp5der Marks by the Merchant Defendants and other merchants on the Alibaba Platforms, which have used, and are continuing to use, the Alibaba Defendants' services, such as marketing, shipping and payment processing services, in connection with their manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

173.    The Alibaba Defendants' continuing egregious, knowing and intentional contribution to the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities herein constitutes intentional contributory infringement of the federally registered Sp5der Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 and willful contributory counterfeiting of Plaintiff's

Sp5der Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), 1117(b)-(c), and 1125(a).

174.    As a direct and proximate result of the Alibaba Defendants' egregious, knowing and intentional actions alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and valuable rights in and to Plaintiff's Sp5der Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, the Alibaba Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Plaintiff's Sp5der Marks.

175.    Based on the Alibaba Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of the same, and all gains, profits and advantages obtained by the Alibaba Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection

with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement and/or contributory trademark infringement of Plaintiff's federally registered Sp5der Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.    For an award of damages to be proven at trial for common law unfair competition;

F.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.    manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

      ii.    directly or indirectly infringing in any manner any of Plaintiff's Sp5der Marks;

iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Sp5der Marks to identify any goods or services not authorized by Plaintiff;

iv. using any of Plaintiff's Sp5der Marks or any other marks that are confusingly similar to the Sp5der Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix. from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any

computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.   providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.   instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

G.   For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Sp5der Marks, or bear any marks that are confusingly similar to the Sp5der Marks;

H.   For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and

promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Sp5der Marks, or bear any marks that are confusingly similar to the Sp5der Marks pursuant to 15 U.S.C. § 1118;

I.     For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.     For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.     For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.     For Plaintiff's reasonable attorneys' fees;

M.     For all costs of suit; and

N.     For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: August 30, 2023                    Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:    _____
       Ashly E. Sands (AS 7715)
       asands@ipcounselors.com

Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*King Spider LLC*